[L. A. No. 26565. In Bank. Jan. 18, 1962.]

HERMAN BLUMENTHAL, Plaintiff and Appellant, v.
THE BOARD OF MEDICAL EXAMINERS, Defend-
ant and Respondent.

230

Ellis J. Horvitz for Plaintiff and Appellant.

Stanley Mosk, Attorney General, and Philip C. Griffin, Deputy Attorney General, for Defendant and Respondent.

Athearn, Chandler & Hoffman, Walter Hoffman, Clark W. Maser, Richard Harrington, Wilke, Fleury & Sapunor and Jack M. Sapunor as Amici Curiae on behalf of Defendant and Respondent.

TRAYNOR, J.—Petitioner appeals from a judgment denying his petition for a writ of mandate to compel the Board of Medical Examiners to register him as a dispensing optician. Petitioner's first application for a license, filed on or about March 5, 1957, was denied on April 18, 1957, because he had not established that he had "at least five (5) full years of actual experience in taking facial measurements and fitting and adjusting lenses or frames in an establishment or establishments of a dispensing optician registered under this chapter or of a dispensing optician engaged in dispensing prior to the enactment of this chapter and thereafter registered, or who has been licensed as a dispensing optician for a period of five years in another state."[1] (Bus. & Prof. Code, § 2552, subd. (a).) Petitioner's second application, filed on or about May 21, 1957, was denied on October 17, 1958, on the same ground. The board also found that petitioner had not met the requirement of good moral character imposed by subdivision (b) of section 2552. The basis for this finding was that petitioner had pleaded guilty to a misdemeanor charge of

___

[1]Petitioner contends that this section should be interpreted as permitting issuance of licenses to applicants who establish that they have been licensed in another state for a period of five years. This interpretation was adopted by the Attorney General before the enactment in 1953 of section 2553.1, which provided in detail for the issuance of licenses to applicants who have had five years' experience as licensed opticians in another state. (16 Ops. Atty. Gen. 93, 94.) The board suggests that section 2552, properly interpreted, does not permit issuance of licenses to such applicants, but does permit issuance of licenses to applicants who demonstrate five years' experience in a dispensing establishment licensed in California or in another state. Under either interpretation the statute is subject to the objections made by petitioner, and it is therefore unnecessary to decide which is correct.

having dispensed optical goods without a license (Bus. & Prof. Code, §§ 2550, 2558) on or about April 9, 1958. He was fined and placed on probation. In September 1958 he dispensed optical goods again without a license and in violation of his probation.

Petitioner completed high school and spent two years at the University of Southern California in preoptometry. He worked for Commercial Optical Company in Omaha, Nebraska from 1930 to 1935. During this time he engaged in shop work (the manufacture of optical goods) and in dispensing (the fitting and adjusting of optical products). This company was not licensed as a dispensing optician, for Nebraska does not require a license of dispensing opticians.

From 1935 to 1942 petitioner worked for the Dietrich Optical Company in Los Angeles, which was licensed as a dispensing optician. Although he did some dispensing there, it appears that his primary occupation involved shop work. From 1942 to 1949 he worked for the Superior Optical Company in Los Angeles, where he was engaged exclusively in shop work except for a six-month period during which he did dispensing work for another registered dispensing optician.

From 1949 to 1952 petitioner operated his own optical laboratory where he engaged solely in manufacturing. He dispensed the manufactured product only occasionally when he went to a doctor's office to assist the dispensers there. From 1952 to 1957 he worked as a dispensing optician in the office of a registered ophthalmologist in Beverly Hills.

In March 1957 petitioner opened his own dispensing and manufacturing establishment in Beverly Hills and applied for a license as a dispensing optician.

Petitioner admits that he does not meet the experience requirement of subdivision (a) of section 2552 of the Business and Professions Code, but urges that this subdivision is unconstitutional on the ground that it imposes inequalities prohibited by the equal protection clause of the Fourteenth Amendment of the United States Constitution and article I, sections 11 and 21 of the Constitution of the State of California.

Section 2552, subdivision (a) discriminates between persons who have served the requisite five-year apprenticeship or who have been licensed for five years in another state and other persons regardless of their qualifications. To conflict with constitutional provisions, however, the discrimination

"must be 'actually and palpably unreasonable and arbitrary,' or the legislative determination as to what is a sufficient distinction to warrant the classification will not be overthrown. [Citations.] ▄▄▄ When a legislative classification is questioned, if any state of facts reasonably can be conceived that would sustain it, there is a presumption of existence of that state of facts, and the burden of showing arbitrary action rests upon the one who assails the classification. [Citations.]" (*People* v. *Western Fruit Growers, Inc.*, 22 Cal.2d 494, 506-507 [140 P.2d 13]; *Department of Mental Hygiene* v. *McGilvery*, 50 Cal.2d 742, 760 [329 P.2d 689].) ▄▄▄ "So long as the statute does not permit one to exercise the privilege while refusing it to another of like qualifications, under like conditions and circumstances, it is unobjectionable upon this ground." (*Watson* v. *Division of Motor Vehicles*, 212 Cal. 279, 284 [298 P. 481].)

▄▄▄ A discrimination, however, that bears no reasonable relation to a proper legislative objective is invalid. Thus, in *Accounting Corp.* v. *State Board of Accountancy*, 34 Cal. 2d 186 [208 P.2d 984], we held unconstitutional legislation that permitted corporations that had been engaged in the practice of public accountancy for at least three years before the effective date of the statute to continue in business, but made unlawful such practice by all other corporations, because "a statute which permits some corporations to continue operations as public accountants while denying others that privilege where no reasonable grounds exist for such favoritism, denies equal protection to the excluded corporations and grants unlawful privileges to the favored." (P. 191.) In *Del Mar Canning Co.* v. *Payne*, 29 Cal.2d 380 [175 P.2d 231], we struck down a regulation that permitted certain fish-reduction plants to obtain operating permits but denied permits to others because the classification was "purely arbitrary and capricious, resting on no reasonable or substantial difference between the classes when considered in relation to the object of the regulation." (P. 383.)

▄▄▄ Section 2552 is designed to protect the public from incompetent and unethical opticians. We are unable, however, to find any reasonable difference between the classes established by subdivision (a) of that section that would justify the discrimination imposed.

▄▄▄ Proponents of section 2552, subdivision (a) contend that it was reasonable for the Legislature to impose the restrictive apprenticeship requirement because of conditions

prevalent in the industry. They point to the long history of abuses, of which both unscrupulous physicians and dispensing opticians have been guilty, involving referrals, rebates, and other unethical means of extracting secret profits from a helpless public. Certainly such conditions justify corrective action by the Legislature, and in 1939 chapter 5.5 of the Business and Professions Code established a licensing procedure for dispensing opticians and prohibited misleading advertising and other unethical practices. The 1947 amendment to section 2552 of the Business and Professions Code requires applicants for licenses as dispensing opticians to demonstrate good moral character. Section 650 of the Business and Professions Code, enacted in 1949, prohibits unearned rebates, refunds and commissions as compensation for referrals.

It is suggested that this history of abuses led the Legislature to conclude that future dispensing opticians could develop a proper ethical foundation for their professional careers only by working under the direction of licensed dispensing opticians. We do not believe that the Legislature could reasonably have concluded that training as a dispensing optician acquired in a physician's office, in a college, university, or other educational institution, in the armed services, or in another state not requiring a license of persons dispensing optical goods, would tend to perpetuate the ethical abuses that have prevailed in this profession, and that such training acquired as an apprentice in a licensed dispensing establishment, or experience acquired by virtue of having been licensed in another state, would lead to the elimination of these abuses. There is a complete absence of any relationship between the experience requirements sought to be imposed and the legislative effort to correct ethical abuses in the profession. The Legislature has taken direct action against these abuses and may take such further action as it deems necessary, but it cannot reasonably be contended that the legislation in question bears any relation to these problems.

 Proponents of section 2552, subdivision (a) also contend that the Legislature might reasonably have concluded that experience obtained under the tutelage of a licensed dispensing optician or experience as a licensed dispensing optician in another state is reasonably necessary to insure the expertise required for the practice of this specialized profession. Subdivision (a), however, requires no particular course of training and imposes no standards for judging the

licensing of other states. Thus, one who spends five years as an apprentice in a licensed establishment, or as a licensee of another state, no matter how narrowly limited his actual experience and capacity, is conclusively presumed to be more qualified than persons like petitioner, who have had many years of experience in dispensing and related fields but are given no opportunity to demonstrate their qualifications. Those who have had many years of broad experience in the armed services, in other states or foreign countries, or in the employ of a licensed eye physician, are prohibited from the practice of their chosen occupation, not because they are incompetent or unethical, but merely because they have not served the required term of apprenticeship or had the good fortune to work in another state that requires a license. Such arbitrary restrictions upon the right to work are not defensible. (*Cf. James* v. *Marinship Corp.,* 25 Cal.2d 721, 731 [155 P.2d 329, 160 A.L.R. 900].) The conclusion is inescapable that the experience necessary to qualify a person to dispense optical goods, whatever level of expertise is demanded, is obtainable in a variety of ways. By prescribing that such experience may be obtained in only two ways, neither of which may reasonably be thought to be superior to others, subdivision (a) contravenes the constitutional requirement that regulatory legislation avoid arbitrary and unreasonable classifications.

 The conclusion that section 2552, subdivision (a) is invalid is reinforced by other considerations. It confers upon presently licensed dispensing opticians the unlimited and unguided power to exclude from their profession any or all persons. "While the delegation of governmental authority to an administrative body is proper in some instances, the delegation of absolute legislative discretion is not. To avoid such a result it is necessary that a delegating statute establish an ascertainable standard to guide the administrative body. Here the statute assumes to confer legislative authority upon those who are directly interested in the operation of the regulatory rule and its penal provisions with no guide for the exercise of the delegated authority." (*State Board of Dry Cleaners* v. *Thrift-D-Lux Cleaners, Inc.,* 40 Cal. 2d 436, 448 [254 P.2d 29].) The minority in the *Thrift-D-Lux* case would have sustained the questioned statute because it conferred power upon an administrative agency, some of whose members were to be appointed from the dry-cleaning industry, rather than upon private members of the industry at large. Subdivision (a), however, delegates exclusionary power to

private members of the industry. Furthermore, in the *Thrift-D-Lux* case the statute provided some standards, held to be inadequate by the majority and thought by the minority to be sufficient. Subdivision (a) contains no guidance whatever for the private persons to whom power is delegated.

The absence of such standards, or safeguards (see 1 Davis, Administrative Law Treatise, § 2.15, pp. 148-151), renders effective review of the exercise of the delegated power impossible. If section 2552, subdivision (a) is sustained, persons excluded from the occupation of optical dispensing because of the refusal of licensed opticians to employ them for the five-year period, no matter what the reason for such refusal might be, will have no remedy, for licensed opticians are under no duty to employ anyone, for five years or for any other period. Moreover, presently licensed dispensing opticians will be given virtually absolute economic control over those employees who are required to serve under them in order to attain future professional objectives. Delegated power must be accompanied by suitable safeguards to guide its use and to protect against its misuse. (*A. L. A. Schecter Poultry Corp.* v. *United States*, 295 U. S. 495, 537-538 [55 S.Ct. 837, 79 L.Ed. 1570, 97 A.L.R. 947]; *Jersey Maid Milk Products Co.* v. *Brock*, 13 Cal.2d 620, 641-642 [91 P.2d 577]; *People* v. *Monterey Fish Products Co.*, 195 Cal. 548, 558-559 [234 P. 398, 38 A.L.R. 1186]; see 1 Davis, Administrative Law Treatise, § 2.15, pp. 148-151.)

Other jurisdictions have invalidated similar legislation. (*Smith* v. *Texas*, 233 U. S. 630, 638 [34 S.Ct. 681, 58 L.Ed. 1129, L.R.A. 1915D 677] [requiring freight conductors to have had experience as brakemen]; *Schroeder* v. *Binks*, 415 Ill. 192 [113 N.E.2d 169, 172-173] [requiring an apprenticeship to secure a license as a master plumber]; *People* v. *Brown*, 407 Ill. 565 [95 N.E.2d 888, 893-899] [requiring an apprenticeship to secure a license as a master plumber]; *People* v. *Ringe*, 197 N.Y. 143 [90 N.E. 451, 454, 18 Ann.Cas. 474, 27 L.R.A. N.S. 528] [requiring an apprenticeship to secure a license as an undertaker]; *City of Sioux Falls* v. *Kadinger*, 73 S.D. 217 [50 N.W.2d 797, 799-800] [requiring an apprenticeship to secure a license as a master plumber]; *Hollingsworth* v. *State Board of Barber Examiners*, 217 Ind. 373 [28 N.E.2d 64, 67] [permitting 80 per cent of licensed barbers to fix minimum prices and opening and closing hours]; *Fink* v. *Cole*, 302 N.Y. 216 [97 N.E.2d 873, 876] [delegating to private jockey clubs power to license horse owners, trainers, and

jockeys] ; see other cases discussed in 1 Davis, Administrative Law Treatise, § 2.14, pp. 138-147.) Defendant would distinguish these cases on the ground that they did not involve the healing arts. ▆▆▆ When, as here, however, a statute discriminates between members of different classes, and the discrimination has no reasonable relation to the public health, safety and welfare, it must fall whether it involves the healing arts or any other activity.

Defendant invokes *Ex parte Whitley,* 144 Cal. 167 [77 P. 879, 1 Ann.Cas. 13], upholding a statute requiring certain kinds of experience for a license as a dentist. The statute, however, provided three methods of acquiring the requisite experience, and the court held only that experience or training was a permissible standard for determining the competency of an applicant for admission to the practice of dentistry. The case does not stand for the proposition that the Legislature may discriminate arbitrarily between persons with the same experience because they have received it under conditions differing only in respects not relevant to their qualifications.

Proponents of section 2552, subdivision (a) cite other cases upholding restrictions upon the practice of the healing arts based upon experience or training. None of these cases purport to foreclose invalidation of regulatory statutes that establish palpably unreasonable classifications. Indeed, at least one of the cases relied upon by the proponents of subdivision (a) expressly leaves open the possibility of invalidation of more arbitrary regulations. (*People* ex rel. *Chicago Dental Society* v. *A.A.A. Dental Laboratories, Inc.,* 8 Ill.2d 330 [134 N.E.2d 285, 289-290].) Others involved statutes quite different from subdivision (a) that appear to be eminently reasonable. (*Mann* v. *Board of Medical Examiners,* 31 Cal.2d 30, 41-42 [187 P.2d 1] ; *In re Rust,* 181 Cal. 73, 81 [183 P. 548] ; *People* v. *Ratledge,* 172 Cal. 401, 403, 405 [156 P. 455] ; *Arwine* v. *Board of Medical Examiners,* 151 Cal. 499, 504 [91 P. 319] ; *People* ex rel. *Stepski* v. *Harford,* 286 N.Y. 477, 484-485 [36 N.E.2d 670] ; *Norwood* v. *Parenteau,* 75 S.D. 303, 311-312 [63 N.W.2d 807].)

▆▆▆ The invalidity of subdivision (a) of section 2552 does not affect the provisions of subdivision (b), which requires applicants to present affidavits establishing experience, good moral character, and competence. The Legislature may require applicants for licenses as dispensing opticians to demonstrate that they have these qualities. (See *Gospel Army* v. *City of Los Angeles,* 27 Cal.2d 232, 248 [163 P.2d 704] ; *Ex*

*parte Whitley, supra,* pp. 177-178; *People* ex rel. *Chicago Dental Society* v. *A.A.A. Dental Laboratories, Inc., supra,* p. 290.) The 1939 enactment regarding dispensing opticians contained a lengthy severability clause. Section 24 of the Business and Professions Code also provides that "If any provision of this code, or the application thereof, to any person or circumstance, is held invalid, the remainder of the code, or the application of such provision to other persons or circumstances, shall not be affected thereby." ▮ The test of severability is whether the invalid parts of the statute can be severed from the otherwise valid parts without destroying the statutory scheme, or the utility of the remaining provisions. (*Forster Shipbldg. Co.* v. *County of Los Angeles,* 54 Cal.2d 450, 457 [6 Cal.Rptr. 24, 353 P.2d 736]; *People* v. *McCaughan,* 49 Cal.2d 409, 416 [317 P.2d 974].) The invalidity of subdivision (a) in no way affects subdivision (b). Independent parts of amendments, as well as independent parts of original enactments, are severable.

Similarly, those parts of subdivision (a) that are not invalid in themselves are not affected by the only invalid requirement in subdivision (a), namely that experience be obtained ". . . in an establishment or establishments of a dispensing optician registered under this chapter or of a dispensing optician engaged in dispensing prior to the enactment of this chapter and thereafter registered, or who has been licensed as a dispensing optician for a period of five years in another state." Thus, the provisions of subdivision (a) defining the persons of whom experience is required and specifying the amount of experience necessary for registration are valid. Those parts of the subdivision serve a purpose independent of the purpose for which the invalid apprenticeship requirement was included, and can function independently of it. They are therefore severable from the invalid part of the subdivision. (*Forster Shipbldg. Co.* v. *County of Los Angeles, supra; People* v. *McCaughan, supra.*)

The alternative ground upon which the board relied in denying petitioner's application for a license was that he failed to establish good moral character. The basis for this finding was that petitioner had dispensed optical goods without a license. When petitioner violated the statute, however, the board had already denied his application because he had not met the requirements of section 2552, subdivision (a). ▮ Although failure to conform to an unconstitutional regulation might under some circumstances be evidence of bad character,

it is not here, where petitioner did not violate the statute until denial of his application for failure to satisfy the very condition that renders the regulation invalid and where the violations indicate no continued intention to disregard the law but rather an effort to establish its invalidity.

The board contends that petitioner testified falsely regarding the second instance of dispensing without a license. The record establishes, however, that petitioner was, at most, confused as to the meaning of ''dispensing'' under the statute. His testimony does not appear to have been intentionally false.

It is also suggested that petitioner is precluded by his guilty plea in the previous criminal action from attacking the constitutionality of section 2552, subdivision (a). A conviction for violation of an unconstitutional statute, however, may be attacked collaterally. (*In re Dixon,* 41 Cal.2d 756, 762 [264 P.2d 513]; *In re Bell,* 19 Cal.2d 488, 492-495 [122 P.2d 22].)

Petitioner has proved that he has met the requirement of five years' experience in optical dispensing. He has furnished the requisite affidavits attesting to his good moral character. He is therefore entitled to be licensed as a dispensing optician.

The judgment is reversed and the case remanded to the trial court with directions to issue the writ ordering the Board of Medical Examiners to register petitioner as a dispensing optician.

Gibson, C. J., Schauer, J., McComb, J., Peters, J., White, J., and Dooling, J., concurred.

Respondent's petition for a rehearing was denied February 14, 1962.