[Sac. No. 7820.  In Bank.  Mar. 18, 1968.]

ROGER WHITTAKER et al., Petitioners, v. THE SUPERIOR COURT OF SHASTA COUNTY et al., Respondents.

Pickering & Wells and Jerrald K. Pickering for Petitioners.

Thomas C. Lynch, Attorney General, Doris H. Maier, Assistant Attorney General, Nelson P. Kempsky and Edsel W. Haws, Deputy Attorneys General, for Respondents.

SULLIVAN, J.—On December 21, 1966, petitioner Roger Whittaker was convicted by a jury in the Justice Court of the Redding Judicial District (Shasta County) of violating section 2141 of the Business and Professions Code, which provides in general that the practice of medicine without a valid, unrevoked physician's certificate constitutes a misdemeanor. (See also Bus. & Prof. Code, §§ 2135, 2137. 2426.) On the same date petitioner George C. Stevenson, M.D., was convicted in the same court of the same crime as an aider and abettor. (See Pen. Code, § 31.) The convictions arose out of an operation performed by Dr. Stevenson during which Whittaker acted as a surgical technician.

From the judgments of conviction, each petitioner appealed to the Superior Court of Shasta County. (See Cal. Const., art.

VI, § 11;[1] Pen. Code, §§ 1466-1469; Cal. Rules of Court, rules 181-191.) After a hearing before the presiding judge of that court, sitting alone, the judgments were affirmed on April 17, 1967. A petition for certification by the superior court that transfer of said cases to the Court of Appeal appeared necessary, was denied April 28, 1967. (See Pen. Code, § 1471; Cal. Rules of Court, rules 62, 63.) Petitioners nevertheless appealed to the Court of Appeal which on June 20, 1967, on motion of the People, dismissed their appeals.

On June 27, 1967, petitioners filed in the Court of Appeal, Third Appellate District, a ''Petition for Writ of Certiorari, Coram Nobis or in the Alternative a Writ of Mandamus'' which alleged, insofar as is here relevant, that the failure of the Superior Court of Shasta County to convene a three-judge appellate department to hear their appeals constituted a violation of their rights under the due process and equal protection clauses of the Fourteenth Amendment to the United States Constitution as well as under comparable provisions of the California Constitution. On July 11 an order to show cause issued (see Code Civ. Proc., § 1069), and on December 28, 1967, the court issued a writ ordering that the Superior Court of Shasta County vacate its judgment on appeal and convene a three-judge appellate department of the superior court to hear petitioners' appeal.

In view of the far-reaching effect of this decision, and of the necessity that the issues involved be determined by the higher courts at the earliest possible opportunity, we transferred the matter to this court on our own motion and without waiting for the decision to become final as to the Court of Appeal. (See Cal. Const., art. VI, § 12; 1967 Judicial Council Report 77; Witkin, *New Rules on Appeal, Part IV, Hearing and Determination of Appeal* (1944) 17 So.Cal.L.Rev. 232, 267-268.)

The holding of the Court of Appeal was, in brief, that that portion of section 77 of the Code of Civil Procedure which provides for a three-judge appellate department only in counties which have a municipal court[2] is violative of the equal

---

[1]It is to be noted that these appeals were taken after the revision of article VI of the California Constitution adopted at the general election held November 8, 1966. Hereafter, unless otherwise noted, all section references to California Constitution article VI are to the *new* article VI.

[2]Subdivision (a) of section 77 provides that ''There is an appellate department of the superior court in every county and city and county which has one or more municipal courts.'' There is no statutory or con-

protection clause of the Fourteenth Amendment and is therefore void. A proper consideration of this question requires some understanding of California court structure, a matter which we now proceed to consider in brief outline.

stitutional provision for a three-judge appellate department of the superior court in counties which do not have a municipal court.

The legislative history of section 77 makes it clear that it was the intention of the Legislature to provide for an appellate department *only* in those counties having a municipal court. Authority for the establishment of appellate departments was first given in 1924 when former article VI, section 5, of the state Constitution was amended to read in part as follows: ''The Legislature may, in addition to any other appellate jurisdiction of the superior courts, also provide for the establishment of appellate departments of the superior courts *in any county or city and county wherein any municipal court is established,* and for the constitution, regulation, jurisdiction, government and procedure of such appellate departments, . . .'' (Italics added.) After the section was in 1928 recast in language substantially identical as here relevant, the Legislature in 1929 acted pursuant to the constitutional authorization and enacted former sections 77a and 77b of the Code of Civil Procedure. Former section 77a provided for the establishment of an appellate department ''In the superior court *of every county or city and county wherein any municipal court is established''* (italics added), such appellate department to consist of three judges of ''such superior court'' designated by the Chairman of the Judicial Council. Former section 77b provided that the appellate department had appellate jurisdiction over all appeals from municipal and inferior courts within its county except those requiring a trial de novo on appeal. The language of former section 77a caused some uncertainty as to whether an appellate department was to exist in counties which had a municipal court but which had less than three superior court judges; this uncertainty was resolved by a 1949 amendment which clearly provided for an appellate department only ''In the superior court of every county or city and county having three or more superior court judges *wherein any municipal court is established.''* (Italics added.) In 1953 the Legislature reorganized the statutes dealing with this subject and reenacted the contents of former sections 77a and 77b in a section of the Government Code, but in 1955 the sections were restored to the Code of Civil Procedure in an entirely new form which clearly provided for appellate departments *in all counties having municipal courts,* regardless of how many superior court judges were in such counties; in such counties having less than three judges the senior or sole judge was to sit alone as the appellate department. Finally, in 1961, the present section 77 was enacted, and the three-judge appellate department was established as the rule *for all counties having a municipal court,* provision being made for the appointment by the chairman of the Judicial Council of additional judges to sit in the appellate department of counties having less than three superior court judges.

In November of 1966 the constitutional provisions relating to appellate departments found in former article VI, section 5, were repealed; the new section dealing with appellate jurisdiction—article VI, section 11— makes no specific mention of appellate departments and provides as here relevant only that ''Superior courts have appellate jurisdiction in causes prescribed by statute that arise in municipal and justice courts in their counties.'' Official commentary on the new provision indicates that the deletion of earlier constitutional language specifically dealing with appellate departments is intended only to render the matter subject to legislative control. (See fn. 5, *post.*)

In this state the principal trial court, having unlimited monetary and subject matter jurisdiction except where jurisdiction is expressly given courts of limited jurisdiction, is the superior court. "In each county there is a superior court of one or more judges." (Cal. Const., art. VI, § 4.)

In addition, there are courts of limited jurisdiction[3] in each county. "Each county shall be divided into municipal court and justice court districts as provided by statute, but a city may not be divided into more than one district. . . . There shall be a municipal court in each district of more than 40,000 residents and a justice court in each district of 40,000 residents or less." (Cal. Const., art. VI, § 5.) The division of counties into judicial districts is, by statute, a function of the respective boards of supervisors of the several counties. (See Gov. Code, § 71040 et seq.)[4]

The state Constitution provides that the "Superior courts have *appellate jurisdiction* in causes prescribed by statute that arise in municipal and justice courts in their counties." (Italics added.) (Cal. Const., art. VI, § 11.) Statutory imple-

[3]It has been pointed out that municipal and justice courts, taken as a class of limited-jurisdiction courts, are not properly denominated "inferior courts" because the municipal court is a court of record (Cal. Const., art. VI, § 1) to which the presumption of jurisdiction is applicable (see *Adolph M. Schwartz, Inc.* v. *Burnett Pharmacy* (1931) 112 Cal.App.Supp. 781, 787 [295 P. 508], whereas the justice court is not. The usefulness of this distinction is subject to doubt. (See generally 1 Witkin, Cal. Procedure (1954) § 56, pp. 181-182.)

[4]It is clear from the foregoing that counties having a population of 40,000 or less *may not have* a municipal court; that counties having a population in excess of 40,000 and a city within their boundaries of more than 40,000 population *must have* a municipal court; and that counties having a population of more than 40,000 but lacking a city of more than 40,000 population *may at the option of the board of supervisors have* a municipal court.

It should also be noted, however, that the Judicial Council is required to submit to the several boards of supervisors from time to time its recommendations as to alteration of district boundaries "with a view toward creating a greater number of full-time judicial offices, equalizing the work the the judges, expediting judicial business, and improving the administration of justice"; and that consolidation of judicial districts may take place only after notice and public hearing. (Gov. Code, § 71042.)

Official records of the Judicial Council, of which we take judicial notice (Evid. Code, § 452) reflect that prior to February 3, 1965, in response to a request from the Shasta County Board of Supervisors, the Judicial Council undertook a study of the judicial districts of Shasta County; that as a result of this study the Judicial Council on that date submitted its recommendation, prepared in accordance with section 71042, that the existing nine judicial districts in the county be consolidated into three, one of which was to have a municipal court; and that to date no action has been taken by the board of supervisors in furtherance of this recommendation.

mentation[5] of this provision manifests differences in the scope and content of such appellate jurisdiction according to (1) whether there is an appellate department of the superior court in the county; (2) whether the appeal is from a municipal or justice court; (3) whether the appeal, if from a justice court, involves questions of fact; and (4) whether the judgment appealed from is civil or criminal.

In counties where there *are* municipal courts, and where there is therefore an appellate department of the superior court (see fn. 2, *ante*), all appeals involving only questions of law, whether such appeals be from municipal courts or justice courts and whether they be in civil or criminal cases, are heard in the appellate department. (Code Civ. Proc., §§ 77, subd. (g), 983, subd. (a); Pen. Code, § 1469;[6] see also *People*

[5]The 1967 Judicial Council Report to the Governor and the Legislature, at p. 76, states in its comment upon section 11 that "the deletion of [former] constitutional provisions for appellate departments of the superior courts permits this matter to be regulated by statute." (See fn. 2, *ante*.)

[6]Section 77, subdivision (g), of the Code of Civil Procedure provides in relevant part: "Every appellate department under this section shall have jurisdiction on appeal from the municipal and justice courts within the county or city and county in all cases in which an appeal may be taken to the superior court as is now or may hereafter be provided by law, except such appeals as require a retrial in the superior court. . . ."

Section 983, subdivision (a), of the Code of Civil Procedure provides: "An appeal may be taken from a municipal or justice court on questions of law alone, in the following cases: 1. From a final judgment entered in an action or special proceeding commenced therein or transferred thereto from another court; 2. From an order granting a new trial or denying a motion for judgment notwithstanding the vredict; 3. From an order discharging or refusing to discharge an attachment; 4. From an order changing or refusing to change the place of trial; 5. From an order granting or dissolving an injunction, or refusing to grant or dissolve an injunction; 6. From an order appointing a receiver; 7. From any special order made after final judgment; 8. From an order granting a motion to quash service of summons."

Section 1469 of the Penal Code provides: "Upon appeal by the people the reviewing court may review any question of law involved in any ruling affecting the judgment or order appealed from, without exception having been taken in the trial court. Upon an appeal by a defendant the court may, without exception having been taken in the trial court, review any question of law involved in any ruling, order, instruction, or thing whatsoever said or done at the trial or prior to or after judgment, which thing was said or done after objection made in and considered by the trial court and which affected the substantial rights of the defendant. The court may also review any instruction given, refused or modified, even though no objection was made thereto in the trial court if the substantial rights of the defendant were affected thereby. The reviewing court may reverse, affirm or modify the judgment or order appealed from, and may set aside, affirm or modify any or all of the proceedings subsequent to, or dependent upon, such judgment or order, and may, if proper, order a new trial. If a new trial is ordered upon appeal, it must be had in the superior court unless the appeal is from a municipal court in which

v. *Allenthorp* (1966) 64 Cal.2d 679, 682 [51 Cal.Rptr. 244, 414 P.2d 372]; *Thomasian* v. *Superior Court* (1953) 122 Cal. App.2d 322, 331-333 [265 P.2d 165]; *Unemployment etc. Com.* v. *St. Francis etc. Assn.* (1943) 58 Cal.App.2d 271, 274-275 [137 P.2d 64].) When, however, a *civil* appeal from a justice court in such a county involves questions of fact or questions of both law and fact, or when the appeal is from a justice or municipal court in such a county sitting as a small claims court, there must be a trial de novo before a one-judge superior court. (Code Civ. Proc., §§ 77, subd. (g), 983, subd. (b), 117j.)[7] Criminal appeals from municipal or justice courts may raise only questions of law (Pen. Code, § 1469;[8] see also *People* v. *Garrigan* (1955) 137 Cal.App.2d Supp. 854, 856 [289 P.2d 892]) so that such appeals in counties having municipal courts are heard by the appellate department.

In counties where there are *no* municipal courts, and where there is therefore no appellate department of the superior court, all appeals both civil and criminal from the justice courts involving *only* questions of law are heard by a single judge of the superior court sitting as a court of appeal. With regard to civil justice court appeals involving questions of fact or questions of both law and fact, or judgments of the small claims court, the situation in such counties is identical with that in counties having municipal courts and appellate departments—the appeal involves a trial de novo before a single judge of the superior court. (Code Civ. Proc., §§ 983, subd. (b), 117j.[9]) Again, criminal appeals from the justice courts may raise only questions of law (Pen. Code, § 1469[10]), and such appeals are heard by a single judge of the superior court sitting as a court of appeal.

---

case the new trial must be had in the court from which the appeal is taken.''

[7]Section 77 subdivision (g) of the Code of Civil Procedure is quoted in relevant part in footnote 6, *ante*.

Section 983 subdivision (b) of the Code of Civil Procedure provides: ''An appeal may also be taken from the final judgment of a justice court on questions of fact or on questions of both law and fact. On such appeal the action shall be tried anew.''

Section 117j of the Code of Civil Procedure provides in relevant part: ''The judgment of [the small claims] court shall be conclusive upon the plaintiff. If the defendant is dissatisfied, he may appeal to the superior court of the county in which said court is held. . . . On appeal the action shall be tried anew. The practice and procedure on appeal and the time and manner in which records on appeal shall be made up and filed shall be prescribed in rules adopted by the Judicial Council. . . .''

[8]See footnote 6, *ante*.

[9]See footnote 7, *ante*.

[10]See footnote 6, *ante*.

In all *civil* appeals not involving a trial de novo the superior court or appellate department ''may affirm, reverse or modify any judgment or order appealed from, and may direct the proper judgment or order to be entered, and may, if necessary or proper, direct a new trial or further proceedings to be had.'' (Code Civ. Proc., § 988h; see also *Stanfford* v. *Municipal Court* (1960) 180 Cal.App.2d 368 [4 Cal.Rptr. 441].) In all *criminal* appeals the superior court or appellate department ''may reverse, affirm or modify the judgment or order appealed from, and may set aside, affirm or modify any or all of the proceedings subsequent to, or dependent upon, such judgment or order, and may, if proper, order a new trial.'' (Pen. Code, § 1469; see also *People* v. *Garrigan, supra,* 137 Cal.App.2d Supp. 854.) When a new trial is ordered by the reviewing court in any appeal, civil or criminal, the new trial must be had in the superior court ''unless the appeal is from a municipal court in which case the new trial must be had in the court from which the appeal was taken.'' (Code Civ. Proc., § 988h; see substantially identical language in Pen. Code, § 1469.)

No further remedy by way of appeal is available after decision of the superior court or appellate department (whether or not a trial de novo is had) unless, in accordance with rules promulgated by the Judicial Council, the Court of Appeal orders the case transferred to itself upon certification by the superior court, or determination by the Court of Appeal itself, that such transfer ''appears necessary to secure uniformity of decision or to settle important questions of law.'' (Code Civ. Proc., § 988t; Pen. Code, § 1471; *People* v. *Allenthorp, supra,* 64 Cal.2d 679, 682; see also Cal. Rules of Court, rules 62 and 63.)

Appended to this opinion and marked Appendix A is a compilation comparing the several counties of the state as to population, number of superior court judges, and existence of municipal courts.[11] This compilation reveals that those counties ranking from No. 1 to No. 22 inclusive in population (7,080,300 to 173,200) have three or more judges in their respective superior courts, have at least one municipal court, and therefore have an appellate department of the superior court; that Santa Cruz County, which ranks No. 23 in popula-

---

[11]This compilation was based upon one prepared by the Attorney General and submitted as an appendix to his supplemental brief in this court.

tion (114,400), has two superior court judges, has a municipal court, and therefore has an appellate department of the superior court; that Merced County, which ranks No. 24 in population (111,900), has two superior court judges but lacks a municipal court and, therefore, an appellate department of the superior court; that Humboldt County, which ranks No. 25 in population (105,800), has three superior court judges, has a municipal court, and therefore has an appellate department of the superior court; and that those counties ranking from No. 26 to No. 58 inclusive in population (105,400 to 400) have no more than two judges in their respective superior courts, have no municipal court, and therefore have no appellate department of the superior court.

Having in mind the foregoing background material, we proceed to consider petitioners' contention that the hearing of their appeal from a criminal judgment of a justice court by a single judge of the superior court denies them equal protection of the laws.

We first emphasize that, as we have observed above, statutory implementation of article VI, section 11, of the state Constitution has indeed resulted in significant differences among appellate procedures applicable in various geographical areas of the state.[12] Among these differences is that of which petitioners here complain: appeals from justice court misdemeanor convictions in counties without a municipal court are heard by a single judge of the superior court sitting as a court of appeal, whereas appeals from justice court (or municipal court) misdemeanor convictions in counties having a municipal court are heard by the three-judge appellate department of the superior court.[13]

---

[12] It is notable that different procedures can apply to different areas *of the same county.* For instance, in a single county having both municipal and justice courts, an appeal from a justice court judgment in an action for breach of contract, if sought on questions of law only, is heard by the appellate department of the superior court; whereas if review of factual questions is sought, the appeal is a trial de novo before a single judge of the superior court. An appeal from a similar judgment of a municipal court in the county, however, would in all cases be heard by the appellate department and would in no case encompass questions of fact. If the judgment of the justice court were reversed, retrial would take place before the superior court; if the judgment of the municipal court were reversed, retrial would take place before the municipal court from which the appeal was taken.

[13] Petitioners also complain that, as a result of the indicated difference, their opportunity to have their appeal transferred to the Court of Appeal is less than that enjoyed by persons in counties having municipal courts and appellate departments. Their argument seems to be that, while *certification* procedures are the same in the two classes of counties (see Code

■ It is clear, however, that neither the equal protection clause of the United States Constitution,[14] nor those provisions of the state Constitution which embody the principle of equality before the law,[15] proscribe legislative classification per se. On the contrary such constitutional provisions, which in general assure that persons in like circumstances be given equal protection and security in the enjoyment of their rights[16] (see 3 Witkin, Summary of Cal. Law (7th ed. 1960) Constitutional Law, § 125, p. 1930), permit classification "which has a substantial relation to a legitimate object to be accomplished. . . ." (*Board of Education* v. *Watson* (1966) 63 Cal.2d 829, 833 [48 Cal.Rptr. 481, 409 P.2d 481]; see *Morey* v. *Doud* (1957) 354 U.S. 457, 463-466 [1 L.Ed.2d 1485, 1490-1492, 77 S.Ct. 1344]; *Blumenthal* v. *Board of Medical Examiners* (1962) 57 Cal.2d 228, 233 [18 Cal.Rptr. 501, 368 P.2d 101]; *Lelande* v. *Lowery* (1945) 26 Cal.2d 224, 232 [157 P.2d 639, 175 A.L.R. 1109]; *People* v. *Western Fruit Growers, Inc.* (1943) 22 Cal.2d 494, 506 [140 P.2d 13]; *Martin* v. *Superior Court* (1924) 194 Cal. 93, 100 [227 P. 762].) So long as such a classification "does not permit one to exercise the privilege while refusing it to another of like qualifications, under like conditions and circumstances, it is unobjectionable

---

Civ. Proc., § 988t; Pen. Code, § 1471), transfer on the Court of Appeal's own motion is possible only in counties with appellate departments. Rule 62 of the California Rules of Court provides in relevant part that the Court of Appeal may transfer on its own motion when it "determines *from an opinion of the appellate department published or to be published in Advance California Appellate Reports* that such transfer appears necessary to secure uniformity of decision or to settle important questions of law." (Italics added.)

[14]". . . nor shall any State . . . deny to any person within its jurisdiction the equal protection of the laws." (U.S. Const., Amend. XIV, § 1.)

[15]"All laws of a general nature shall have a uniform operation." (Cal. Const., art. I, § 11.)

". . . nor shall any citizen, or class of citizens, be granted privileges or immunities which, upon the same terms, shall not be granted to all citizens." (Cal. Const., art. I, § 21.)

Former article IV, section 25, of the California Constitution, which forbade the passage of "local or special laws" in certain enumerated cases, was repealed on November 8, 1966. Its subject matter is now treated in article IV, section 16, which provides: "A local or special statute is invalid in any case if a general statute can be made applicable."

[16]"[T]he test for determining the validity of a statute where a claim is made that it unlawfully discriminates against any class is substantially the same under the state prohibitions against special legislation and the equal protection clause of the federal Constitution." (*County of Los Angeles* v. *Southern Cal. Tel. Co.* (1948) 32 Cal.2d 378, 389 [196 P.2d 773].)

upon this ground." (*Watson* v. *Division of Motor Vehicles* (1931) 212 Cal. 279, 284 [298 P. 481]; see also *Blumenthal* v. *Board of Medical Examiners, supra,* 57 Cal.2d 228, 233.)

█ Finally, it is to be observed that a classification based on legislative experience is presumed valid and will not be rejected unless plainly arbitrary. █ "Statutory discrimination between classes which are in fact different must be presumed to be relevant to a permissible legislative purpose, and will not be deemed to be a denial of equal protection if any state of facts could be conceived which would support it." (*Asbury Hospital* v. *Cass County* (1945) 326 U.S. 207, 215 [90 L.Ed. 6, 13, 66 S.Ct. 61]; see *Board of Education* v. *Watson, supra,* 63 Cal.2d 829, 833.)

█ It is in the context of these well-settled principles that we state the principal question in this case: Does the classification here in question, whereby multiple-judge appellate departments of the superior court exist only in those counties having a municipal court, bear a substantial and reasonable relationship to a legitimate legislative objective?

We first observe that the courts of this nation, both federal and state, have on several occasions upheld against constitutional attack legislative classifications permitting the application of different judicial procedures in different geographical areas or political subdivisions. In the early case of *Missouri* v. *Lewis* (1879) 101 U.S. 22 [25 L.Ed. 989], the United States Supreme Court sustained the Missouri appellate system whereby all appeals from certain counties of that state lay directly to the state Supreme Court, but appeals from other counties lay to the St. Louis Court of Appeals, with further appeal from that court to the state Supreme Court only in cases having a certain minimum amount in controversy. The court said that the equal protection clause "is not violated by any diversity in the jurisdiction of the several courts as to subject-matter, amount, or finality of decision, if all persons within the territorial limits of their respective jurisdictions have an equal right, in like cases and under like circumstances, to resort to them for redress. . . . As respects the administration of justice, [a state] may establish one system of courts for cities and another for rural districts, one system for one portion of its territory and another system for another portion. Convenience. if not necessity, often requires this to be done, and it would seriously interfere with the power of a State to regulate its internal affairs to deny to it this right. We think it is not denied or taken away by anything

in the Constitution of the United States, including the Amendments thereto." (*Missouri* v. *Lewis, supra,* 101 U.S. 22, 30-31 [25 L.Ed. 989, 992].)

In *Mallett* v. *North Carolina* (1901) 181 U.S. 589 [45 L.Ed. 1015, 21 S.Ct. 730], it was contended that the law of North Carolina, permitting the state to appeal to the state Supreme Court from the granting of a new trial by the criminal court for one judicial district but disallowing a similar appeal by the state from the criminal court of another judicial district, denied equal protection of the laws to defendants as to whom such appeal could be taken. The United States Supreme Court, relying upon *Missouri* v. *Lewis, supra,* rejected this contention. (*Mallet* v. *North Carolina, supra,* 181 U.S. 589, 597-599 [45 L.Ed. 1015, 1019-1020].)[17]

In the recent case of *New York State Assn. of Trial Lawyers* v. *Rockefeller* (S.D. N.Y. 1967) 267 F.Supp. 148, plaintiff bar association, together with four alleged plaintiffs in pending personal injury actions, brought an action for declaratory and injunctive relief to require defendants (essentially, the State of New York) to apportion judges throughout the state so as to eliminate disproportionate court delays in certain counties of the state. It was contended that defendants' failure to undertake such "judicial reapportionment" constituted a denial of equal protection.

The United States District Court rejected this claim, relying upon and quoting from *Missouri* v. *Lewis, supra.* In answer to the argument that recent legislative reapportionment cases[18] had sapped the vitality of that decision, the court emphasized that "The state judiciary, unlike the legislature, is not the organ responsible for achieving representative government." (*New York State Assn. of Trial Lawyers* v. *Rockefeller, supra,* 267 F.Supp. 148, 153.) Quoting from the case of *Buchanan* v. *Rhodes* (N.D.Ohio 1966) 249 F.Supp. 860, wherein a similar plea for judicial reapportionment had been made, the court observed: " 'Judges do not represent people,[19] they serve people. They must, therefore, be conveniently located to those people whom they serve. Location,

---

[17]See also *Ocampo* v. *United States* (1914) 234 U.S. 91, 98-99 [58 L.Ed. 1231, 1234-1235, 34 S.Ct. 712]; *Ohio* ex rel. *Bryant* v. *Akron etc. Park Dist.* (1930) 281 U.S. 74, 80-81 [74 L.Ed. 710, 715-716, 50 S.Ct. 228, 66 A.L.R. 1460].

[18]*Reynolds* v. *Sims* (1964) 377 U.S. 533 [12 L.Ed.2d 506, 84 S.Ct. 1362], and companion cases decided on the same day.

[19]"Legislators represent people, not trees or acres." (*Reynolds* v. *Sims, supra,* 377 U.S. 533, 562 [12 L.Ed.2d 506, 527].)

then, is one of the many significant factors which the legisla-ture may properly consider when carrying out its constitutional mandate to create an effective judicial system.' '' (267 F.Supp. at p. 153.)

In *Walber* v. *Piggins* (1966) 2 Mich.App. 145 [138 N.W.2d 772], petitioner had been convicted in a Detroit recorder's court of violating a Detroit city ordinance. She sought appeal by way of trial de novo in the Wayne County Circuit Court, but the recorder's court refused to certify the case for such appeal. Upon her application to the state Court of Appeals for relief in mandamus it was held that, whereas appeal to the circuit court by way of trial de novo lay from convictions in the justice courts of Wayne County, no such appeal lay from convictions in the recorder's courts of the City of Detroit—and the only appeal from such convictions was on the record to the state Court of Appeals itself. It was held that this arrangement did not violate equal protection of the laws. Emphasis was placed on the fact that proceedings in the justice courts were not recorded, so that a trial de novo on appeal was desirable, whereas a record was made in the recorder's court.

The principle which we derive from these cases, and which we apply to the instant case, is this: Legislative classification as to treatment and procedure within a state judicial system according to factors such as geographical area, population, or other relevant considerations, does not deny equal protection of the laws unless such classification is shown to be palpably arbitrary and without a sound basis in reason.

We have concluded that the classification here in question is based upon sound reasons cognizable by the Legislature, and that it therefore does not deny to petitioners the equal protection of the laws. It is of course clear that all persons appealing from judgments of justice courts in counties without municipal courts are treated alike. It is also clear that the presence of a municipal court within a county brings about certain differences in the treatment of such appeals. (Code Civ. Proc., § 77.) The basic question here at issue is therefore whether the hinging of such differences upon the presence or absence of a municipal court within the county represents a reasonable legislative judgment.

Generally speaking, the presence or absence of a municipal court is governed by the population of the county in question. Thus, as we have indicated above, each of the 23 counties having a population of 114,400 (the population of Santa Cruz

County) or more has a municipal court. Similarly, each of the 33 counties having a population of 105,400 (the population of San Luis Obispo County) or less has no municipal court. Of the two counties having populations more than 105,400 and less than 114,400, the more populous (Merced County) lacks a municipal court, and the less populous (Humboldt County) has a municipal court. Thus, with the exception of the two indicated counties, the presence or absence of a municipal court, a matter to some extent within the discretion of the board of supervisors (see fn. 4, *ante*), has a demonstrable relationship to population.

It is clear that population forms a rational basis for classification of appellate procedures applicable to certain geographical areas. Rural counties produce a relatively small number of appeals to superior courts,[20] and the cost of convening multiple-judge courts to hear such appeals would be substantial. The Legislature has made a judgment that such increased costs would not be justified by whatever benefits would accrue in the limited number of appeals involved. We consider that judgment neither unreasonable nor arbitrary.

The fact that the Legislature has not chosen to make population itself the determinative factor, and has instead chosen the presence or absence of a municipal court, does not render the scheme arbitrary. As we have observed, the presence or absence of a municipal court is tied in a general way to population. In addition, it is quite conceivable that the factor chosen relates more directly to the demand for appellate supervision than does population itself. A county of large geographical area may have a substantial population without having an urban center productive of substantial amounts of litigation and appeals.

Finally, we emphasize that the classification here at issue is not of that "hostile or invidious" nature which offends the spirit of equal protection. (See *Norvell* v. *Illinois* (1963) 373 U.S. 420, 424 [10 L.Ed.2d 456, 459, 83 S.Ct. 1366]; *Welch* v. *Henry* (1938) 305 U.S. 134, 144 [83 L.Ed. 87, 92, 59 S.Ct. 121, 118 A.L.R. 1142].) No contention is here made that the appellate review in fact received by petitioners was other than

[20]In the 1966-1967 fiscal year, 2,873 appeals were taken from justice and municipal courts to the superior court. Of these, only 106 were in the 34 counties which have no municipal court. The remaining appeals, 2,767 in number, were taken in the 24 counties which have a municipal court. (Judicial Council of California, Annual Report of the Administrative Office of the California Courts (1968), table 20, p. 134.)

fair and impartial. The fact that they might have received a fair and impartial review of their appellate claims by three judges instead of one had their appeal originated in another county is of no consequence herein. If it be granted that fair review of lower court judgments is a constitutional requirement, there is certainly no requirement that such review assume the same form in all cases. (See and compare *Griffin* v. *Illinois* (1956) 351 U.S. 12, 20 [100 L.Ed. 891, 899, 76 S.Ct. 585, 55 A.L.R.2d 1055]; *People* v. *Hill* (1967) 67 Cal.2d 105, 124 [60 Cal.Rptr. 234, 429 P.2d 586]; *People* v. *Hughes,* (1961) 57 Cal.2d 89, 98-99 [17 Cal.Rptr. 617, 367 P.2d 33].)

▐ We shall not pause to discuss at length petitioners' secondary contention that the hearing of their appeals by one judge of the superior court, rather than by a three-judge appellate department, deprived them of the due process of law guaranteed by the federal and state Constitutions. As pointed out above, petitioners have made no contention that they have received less than a fair review of their particular cases on appeal. Moreover, we reject as utterly baseless the notion that appellate review by one judge rather than three somehow partakes of *inherent* unfairness. It may well be argued that a multiple-judge panel is less susceptible to error or bias than is a single-judge appellate body (see Llewellyn, The Common Law Tradition: Deciding Appeals (1960) pp. 31-32) but the acceptance of such an argument would fall far short of establishing that the latter variety of review is less than fair and impartial.

Petitioners advance several other contentions urging errors and irregularities at their trial, as well as constitutional defects in the statute under which they were convicted (Bus. & Prof. Code, § 2141). We have examined all of these claims and have determined that each is either wholly without merit or insufficient to warrant the extraordinary relief here sought.

The order to show cause is discharged, and the petition is denied.

Traynor, C. J., McComb, J., Peters, J., Tobriner, J., Mosk, J., and Burke, J., concurred.

## Appendix A

| Rank by Population | County | Population* | Judges of Superior Court† | Existence of a Municipal Court |
|---|---|---|---|---|
| 1 | Los Angeles | 7,080,300 | 134 | Yes |
| 2 | San Diego | 1,304,800 | 21 | Yes |
| 3 | Orange | 1,300,300 | 21 | Yes |
| 4 | Alameda | 1,077,900 | 20 | Yes |
| 5 | Santa Clara | 992,100 | 19 | Yes |
| 6 | San Francisco | 753,700 | 24 | Yes |
| 7 | San Bernardino | 676,900 | 10 | Yes |
| 8 | Sacramento | 637,000 | 14 | Yes |
| 9 | San Mateo | 565,100 | 11 | Yes |
| 10 | Contra Costa | 555,200 | 9 | Yes |
| 11 | Riverside | 450,100 | 9 | Yes |
| 12 | Fresno | 424,400 | 8 | Yes |
| 13 | Kern | 343,300 | 5 | Yes |
| 14 | Ventura | 338,200 | 6 | Yes |
| 15 | San Joaquin | 287,700 | 5 | Yes |
| 16 | Monterey | 251,700 | 3 | Yes |
| 17 | Santa Barbara | 251,600 | 5 | Yes |
| 18 | Marin | 204,800 | 4 | Yes |
| 19 | Tulare | 194,100 | 3 | Yes |
| 20 | Sonoma | 190,300 | 4 | Yes |
| 21 | Stanislaus | 184,600 | 4 | Yes |
| 22 | Solano | 173,200 | 3 | Yes |
| 23 | Santa Cruz | 114,400 | 2 | Yes |
| 24 | Merced | 111,900 | 2 | No |
| 25 | Humboldt | 105,800 | 3 | Yes |
| 26 | San Luis Obispo | 105,400 | 2 | No |
| 27 | Butte | 102,700 | 2 | No |
| 28 | Yolo | 86,000 | 2 | No |
| 29 | Shasta | 79,200 | 2 | No |
| 30 | Imperial | 78,900 | 2 | No |
| 31 | Napa | 78,100 | 2 | No |
| 32 | Placer | 75,300 | 2 | No |
| 33 | Kings | 68,600 | 1 | No |
| 34 | Mendocino | 52,400 | 2 | No |

*These figures are taken from ''Provisional Population Estimates for California Counties,'' Financial and Population Research Section, California State Department of Finance, Sacramento, January 1, 1968.

†These figures are taken from sections 68580-69614 of the Government Code.

APPENDIX A—Cont.

| Rank by Population | County | Population | Judges of Superior Court | Existence of a Municipal Court |
|---|---|---|---|---|
| 35 | Yuba | 46,400 | 2 | No |
| 36 | El Dorado | 45,700 | 2 | No |
| 37 | Madera | 45,600 | 1 | No |
| 38 | Sutter | 41,200 | 1 | No |
| 39 | Siskiyou | 35,600 | 1 | No |
| 40 | Tehama | 28,600 | 1 | No |
| 41 | Nevada | 25,800 | 1 | No |
| 42 | Tuolumne | 23,100 | 1 | No |
| 43 | Glenn | 19,000 | 1 | No |
| 44–45 | Lake | 18,100 | 1 | No |
| 44–45 | San Benito | 18,100 | 1 | No |
| 46 | Del Norte | 17,900 | 1 | No |
| 47 | Lassen | 17,500 | 1 | No |
| 48 | Inyo | 15,100 | 1 | No |
| 49 | Colusa | 12,700 | 1 | No |
| 50 | Calaveras | 12,600 | 1 | No |
| 51 | Amador | 12,100 | 1 | No |
| 52 | Plumas | 11,700 | 1 | No |
| 53 | Trinity | 9,500 | 1 | No |
| 54 | Modoc | 7,600 | 1 | No |
| 55 | Mariposa | 6,200 | 1 | No |
| 56 | Mono | 5,000 | 1 | No |
| 57 | Sierra | 2,500 | 1 | No |
| 58 | Alpine | 400 | 1 | No |