Albert C. **FREITAG, et al., Petitioners,**

v.

Marie L. **GOHR, et al., Respondents.**

No. 6009.

Supreme Court of Alaska.

Sept. 29, 1982.

Before BURKE, C. J., and RABINOWITZ, CONNOR, MATTHEWS and COMPTON, JJ.

ORDER

On consideration of the petition for hearing filed May 11, 1981, and the supplemental briefs requested by the court,

IT IS ORDERED:

The petition for hearing is denied.

Dan K. Coffey, Anchorage, for petitioners.

William F. Tull, Palmer, for respondents.

Dana Fabe, Public Defender, Anchorage, for the Public Defender Agency.

Robert C. Bundy, Asst. Atty. Gen., Wilson L. Condon, Atty. Gen., Anchorage, Robert K. Hickerson, Anchorage, for Alaska Legal Services Corp.

RABINOWITZ and MATTHEWS, JJ., dissent.

MATTHEWS, Justice, with whom RABINOWITZ, Justice, joins, dissenting.

In my view, the due process clause of the Alaska Constitution [1] assures every litigant the right to appellate review by a multijudge tribunal. Since denial of the Freitags' petition for hearing in this case deprives them of that right, I dissent.

To obtain payment under a contract with the Freitags, Gohr filed suit against them in the district court.[2] Following a judgment in Gohr's favor, the Freitags appealed to the superior court. A superior court judge dismissed the Freitags' appeal as untimely. In their petition, the Freitags have asked this court to review the superior court's decision and hold that it abused its discretion.

Since the first year of statehood, all Alaska litigants have had recourse to an appeal to the supreme court as a matter of right. Ch. 50, § 1, SLA 1959. Disappointed litigants such as the Freitags have thus historically been assured appellate review by a court consisting of at least three judges. See Alaska Const. art. IV, § 2. Until only recently this right has remained unimpaired.

In 1980 the legislature amended AS 22.-05.010, see ch. 12, § 2, SLA 1980, with the result that certain litigants are now denied the right to multijudge appellate review. AS 22.05.010(b) provides:

> Appeal to the supreme court is a matter of right only in those actions and proceedings from which there is no right of appeal to the court of appeals under AS 22.07.020 or to the superior court under AS 22.10.020 or AS 22.15.240.

Under AS 22.15.240 the Freitags were entitled to appeal the district court's judgment to the superior court, which they did. Thus, they have no right of appeal to the supreme court under AS 22.05.010(b); instead, review by this court is made discretionary, see AS 22.05.010(d), and hence subject to the constraints imposed by Appellate Rule 304. Because there is no statutory requirement that an appeal to the superior court pursuant to AS 22.15.240 be heard by more than one judge, the Freitags have

---

1. Article I, § 7 of the Alaska Constitution provides:

    No person shall be deprived of life, liberty, or property, without due process of law. The right of all persons to fair and just treatment in the course of legislative and executive investigations shall not be infringed.

2. AS 22.15.030(a)(1) grants the district court jurisdiction in civil cases for the recovery of money or damages when the amount claimed, exclusive of costs, interest and attorney's fees does not exceed $10,000. Such jurisdiction is

not exclusive, however, for the superior court has jurisdiction to hear such cases as well. See AS 22.10.020(a); AS 22.15.030(b). Gohr therefore could have sued the Freitags in superior court, in which case the Freitags would have had an appeal to this court as a matter of right. AS 22.05.010(b). Because I believe that all litigants have a state due process right to review by a multijudge court, I do not address the equal protection implications of denying one litigant the right to a meaningful appeal based upon the whim of his adversary.

been denied appellate review by a multi-judge tribunal. In my opinion, such a denial violates due process under the Alaska Constitution.

That effective access to the courts is an important right is beyond peradventure. *See generally Bounds v. Smith,* 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977). In fact, "[i]t is clear that ready access to the courts is one of, perhaps *the,* fundamental constitutional right." *Cruz v. Hauck,* 475 F.2d 475, 476 (5th Cir. 1973) (emphasis in original), *appeal after remand,* 515 F.2d 322 (5th Cir. 1975). The reason for this is simple:

> [S]ome rights are "preservative of all rights" and are therefore deemed fundamental. The right of access to the courts is such a right since the judicial system is the central institution for the assertion, protection, and enforcement of most other rights in our society.

*Carter v. University of Washington,* 85 Wash.2d 391, 536 P.2d 618, 623 (1975), *appeal after remand,* 87 Wash.2d 483, 554 P.2d 338 (1976). While this right of access for the most part has been dealt with in cases involving indigent criminal defendants, "the due process right is much broader: 'it includes access to all courts ... without regard to the type of petition or relief sought.' " *Payne v. Superior Court of Los Angeles County,* 17 Cal.3d 908, 132 Cal. Rptr. 405, 410, 553 P.2d 565, 570 (1976) (quoting *Hooks v. Wainwright,* 352 F.Supp. 163, 167 (M.D.Fla.1972)).

I recognize that under the federal constitution states are not required to provide appellate courts or a right to appellate review at all. *Ross v. Moffitt,* 417 U.S. 600, 611, 94 S.Ct. 2437, 2444, 41 L.Ed.2d 341, 351 (1974); *McKane v. Durston,* 153 U.S. 684, 14 S.Ct. 913, 38 L.Ed. 867 (1894). But as we have frequently noted, this court "is not limited by the decisions of the United States Supreme Court or by the federal constitution when interpreting the provisions of the state constitution, since the latter may have broader safeguards than the minimum federal standards." *Shagloak v. State,* 597 P.2d 142, 144 n.14 (Alaska 1979); *see, e.g., Baker v. City of Fairbanks,* 471 P.2d 386, 401–02 (Alaska 1970); *Roberts v. State,* 458 P.2d 340, 342–43 (Alaska 1969). Indeed, "it would be an abdication of our constitutional responsibilities to look only to the [United States] Supreme Court for guidance." *State v. Browder,* 486 P.2d 925, 936 (Alaska 1971) (footnote omitted).

In my view, assuring effective access to the courts requires that we recognize a concomitant right to obtain meaningful appellate review. For "it would be a hollow gesture to ensure access to the trial courts without affording an opportunity to review and correct errors made at the trial level...." *Carter v. University of Washington,* 536 P.2d at 621. The right to be heard in an appellate court can be just as valuable to an aggrieved party as the right to be heard in the trial court. As Professor Leflar notes:

> It is almost axiomatic that every losing litigant in a one-judge court ought to have a right of appeal to a multijudge court. Most do not appeal, but the right is a protection against error, prejudice, and human failings in general. This relates to the appellate function of rectifying trial court errors, of seeing to it that litigants receive justice according to law. It is assumed correctly that a collegial body, removed from local pressures, sitting calmly in a quiet atmosphere with each judge thinking independently, is best able to catch mistakes and remedy them. The idea of impartial justice can thus be approached.

R. Leflar, Internal Operating Procedures of Appellate Courts 4 (1976).

In this case the Freitags were afforded an appeal to a judge of the superior court. But the touchstone of meaningful appellate review is that the tribunal be, as Leflar puts it, "a collegial body." [3] *See generally*

---

**3.** The American Bar Association's Standards Relating to Court Organization endorse the proposition that an appeal should be decided by at least three judges. *See* ABA Comm'n on Standards of Judicial Administration, Standards Relating to Court Organization, Standard 1.13(b)(iii) (1973).

Jones, *Multitude of Counselors: Appellate Adjudication as Group Decision-Making,* 54 Tul.L.Rev. 541 (1980). "An appeal is not for the purpose of allowing the view of one judge to be substituted for that of another. Rather, the procedure contemplates that a broader perspective and a more contemplative wisdom than a single judge can provide will be brought to bear on the issues." Meador, *Appellate Case Management and Decisional Processes,* 61 Va.L.Rev. 255, 281 (1975). Llewellyn identifies the multijudge tribunal as one of the "major steadying factors in our appellate courts," and states:

> It is trite that a group all of whom take full part is likely to produce a net view with wider perspective and fewer extremes than can an individual; and it is a fair proposition also that continuity is likely to be greater with a group: prior action, attitudes, and unrecorded doubts or reservations which an individual can later easily overlook are likely to be recalled and revived by some other group member.

K. Llewellyn, The Common Law Tradition 31 (1960). Benjamin Cardozo likewise extolled the benefits of multijudge appellate review:

> The eccentricities of judges balance one another. One judge looks at problems from the point of view of history, another from that of philosophy, another from that of social utility, one is a formalist, another a latitudinarian, one is timorous of change, another dissatisfied with the present; out of the attrition of diverse minds there is beaten something which

has a constancy and uniformity and average value greater than its component elements. B. Cardozo, The Nature of the Judicial Process 177 (1921). While appellate review by only one judge may not partake of inherent unfairness, *see Whittaker v. Superior Court of Shasta County,* 68 Cal.2d 357, 438 P.2d 358, 370 (1968), I think it manifest that review by a multijudge tribunal is inherently fairer.[4] I seriously doubt that there is an appellate judge alive who has not witnessed significant change in the outcome of a case as a direct result of the collegial deliberative process. *See* Jones, *Cogitations on Appellate Decision-Making,* 52 N.Y.St.B.J. 189, 217 (1980).

I would hold, therefore, that the Alaska due process clause affords every litigant the right to appellate review by a multijudge court. That it is less costly for the state to provide an appellate court consisting of only one judge does not, in my view, justify a denial of that right. *See Payne v. Superior Court of Los Angeles County,* 553 P.2d at 574. Nor is it a sufficient excuse that the right to have one's appeal heard by a multijudge tribunal is denied only in cases where, as in the district court, the amount in controversy is relatively small; "[j]ustice and good law are needed for little cases as well as for big ones...." R. Leflar, *supra* at 9–10.

For the foregoing reasons, I would grant the Freitags' petition for hearing and judge their case on the merits.

---

4. As Llewellyn notes:
> We commonly attribute to the multiman bench, in addition to steadiness, safety-factors against bias, effective corruption or improper influence, overhaste, slackness, etc., and increased likelihood perhaps of vision (which any member may provide), certainly of balance, so that safety may emerge even if vision be outvoted. The pattern has seemed to justify itself across nations and centuries; and nonjudicial experience is in accord.

K. Llewellyn, The Common Law Tradition 32 n.23 (1960).