[Civ. No. 38786. Second Dist., Div. Three. Mar. 27, 1972.]

ESCROW INSTITUTE OF CALIFORNIA et al., Plaintiffs and Appellants, v.
ANTHONY R. PIERNO, as Commissioner, etc., Defendant and Respondent.

## COUNSEL

Conrad G. Tuohey and John A. McDermott II for Plaintiffs and Appellants.

Evelle J. Younger, Attorney General, Arthur C. de Goede and Richard W. Bakke, Deputy Attorneys General, for Defendant and Respondent.

Fulop, Rolston, Burns & McKittrick and Morton Rosen as Amici Curiae on behalf of Defendant and Respondent.

## OPINION

**FORD, P. J.**—The plaintiffs have appealed from a declaratory judgment as to the constitutionality of the Escrow Law (Fin. Code, § 17000 et seq.) and the regulations issued pursuant thereto (10 Cal. Admin. Code, §§ 1700-1753). The judgment, which was entered pursuant to the granting of the motion of the Commissioner of Corporations for judgment on the pleadings,[1] contains the following declaration: "That the Escrow Law of California and its regulations in their entirety are constitutional and that, in particular, the exemptions specified by section 17006 of the Financial Code are constitutional."

The plaintiffs are Escrow Institute of California, "a nonprofit corporation trade association," and a number of its members, each of the members

---

[1]"A motion for judgment on the pleadings is an appropriate means of obtaining an adjudication of the rights of the parties in a declaratory relief action if those rights can be determined as a matter of law from the face of the pleading attacked, together with those matters of which the court may properly take judicial notice." (*Silver v. Beverly Hills Nat. Bank,* 253 Cal.App.2d 1000, 1005 [61 Cal.Rptr. 751].)

being a California corporation doing business as an "independent Escrow Agent Licensee within the meaning of the Escrow Law."[2]

In the first amended complaint it is alleged: "An actual controversy has arisen and now exists between the plaintiffs and the defendants [the defendants being designated as the Commissioner of Corporations and the Department of Corporations] relating to their respective rights and duties in that plaintiffs contend that the Escrow Law and the Escrow Regulations are constitutionally invalid and unenforceable, both on their face and as applied and construed by defendants, because less than twenty percent (20%) of the escrowed transactions in this State are regulated and subject to the Escrow Law and the Escrow Regulations and over eighty percent (80%) are not, all by virtue of the exemptions specifically set forth in Financial Code Section 17006, whereas defendants dispute such contentions and contend that the Escrow Law and Escrow Regulations and their application to plaintiffs and the members of plaintiff Escrow Institute of California are valid."[3]

It is also alleged that the Escrow Law imposes requirements upon escrow agents subject to it, violations of which constitute either misdemeanors or felonies, the requirements being set forth in the first amended complaint as follows: "1. Must be a corporation; 2. Must have specifically qualified directors; 3. Must have one or more persons possessing a minimum of five (5) years of responsible escrow experience; 4. Must have such a qualified person stationed on duty at each business location during the time the location is open for business; 5. Must deposit a bond in the amount of $5,000.00; 6. Must provide a fidelity bond in addition to the foregoing bond in amounts predicated upon the volume of business; 7. Must have a tangible net worth and excess of liquid assets of $10,000.00; 8. Must have an additional license for the operation of each additional office or business location; 9. Must conduct its escrow transactions and maintain its books,

---

[2]Section 17004 of the Financial Code is: " 'Escrow agent' means any person engaged in the business of receiving escrows for deposit or delivery for compensation."

[3]Section 17006 of the Financial Code is as follows:
"This division [embodying the Escrow Law] does not apply to:
(a) Any person doing business under any law of this State or the United States relating to banks, trust companies, building and loan or savings and loan associations, or insurance companies.
(b) Any person licensed to practice law in California who is not actively engaged in conducting an escrow agency.
(c) Any person whose principal business is that of preparing abstracts or making searches of title that are used as a basis for the issuance of a policy of title insurance by a company doing business under any law of this State relating to insurance companies.
(d) Any person licensed by the Real Estate Commissioner while performing acts in the course of or incidental to his real estate business."

accounts, and records of such escrow transactions, and use forms specifically approved by the Department of Corporations; 10. Must submit to inspection and examination of their business accounts and records at any time without prior notice, and must pay the actual cost therefor; 11. Must annually provide at their own cost and expense, an audit report containing audited financial statements prepared by an independent public accountant; 12. Must segregate all money received by them in a bank; and 13. Must not pay over to any other person any commission, fee or other consideration as compensation for referring, soliciting, handling, or servicing escrow customers or accounts." It is further alleged that "Identical and exact escrow transactions conducted by those specifically exempted from the provisions of the Escrow Law pursuant to Finance [Financial] Code section 17006 are not so regulated by law or regulation."

On this appeal the plaintiffs' primary contention is that the Escrow Law embodies an unconstitutional classification in that the individuals and entities exempted from the provisions thereof by virtue of section 17006 of the Financial Code constitute a class which, in view of the purpose for which the regulatory legislation was enacted, cannot be distinguished from the class of independent escrow agents represented by the plaintiffs. With respect to the claim of discriminatory burdens, portions of the plaintiffs' argument are as follows: "Basically, there are six categories of requirements or burdens which the Escrow Law imposes solely upon the licensee class represented herein by appellants, *i.e.*, independent escrow agents. . . . [¶] First, it is necessary for an independent escrow agent to be a corporation [Fin. Code, § 17200]. . . . [¶] Second, the corporate capitalization must consist of $10,000.00 net worth [Fin. Code, § 17210]. [¶] Third, two types of bonding are required. One, is a $5,000.00 to $10,000.00 bond for an escrow agent's license [Fin. Code, § 17202; 10 Cal.Admin. Code, § 1719]. The other is a fidelity bond in an amount determined by the Commissioner of Corporations [Fin. Code, § 17203.1]. [¶] Fourth, the incorporators or directors of the escrow licensee must possess the 'character, experience, or general fitness to engage in such business' [Fin. Code, § 17209.3]. [¶] Moreover, the escrow licensee must establish that there is an 'officer or manager possessing a minimum of five (5) years of responsible escrow experience to be stationed in the proposed business location' [Fin. Code, § 17209.3]. [¶] Fifth, the licensee must submit to rigorous auditing procedures [Fin. Code, § 17406]. [¶] Sixth, the licensee is subjected to a variety of enforcement remedies. The licensee's license may either be revoked or suspended. . . . *Additionally, felony offenses may be imposed for certain other violations* [Fin. Code, § 17414], *and any violation of the act or its regulations constitutes a misdemeanor* [Fin. Code, § 17011]."[4]

---

[4]Section 17414 of the Financial Code is as follows:

It is to be noted that the Escrow Law was enacted in 1951 (Stats. 1951, ch. 364, p. 1107).[5] It is manifest that at that time, as well as thereafter, the individuals and entities designated as exempt from the provisions of the Escrow Law in section 17006 of the Financial Code were respectively subject to stringent statutes and regulatory provisions governing the conduct of their business or profession. Consequently, it was not unreasonable for the Legislature to determine that further legislation, subjecting them to another administrative agency or official as to the portion of their conduct relating to escrows, was unnecessary for the protection of the public (see *In re Fuller,* 15 Cal.2d 425, 437-438 [102 P.2d 321]), but that appropriate legislation for that purpose was required for the regulation of the more recently emerged business of escrow deposit undertaken by independent escrow agents in California. (See Comment, *The Independent Escrow Agent: The Law And The Licensee* (1965) *supra,* 38 So.Cal.L.Rev. 289.)

The provisions of the Escrow Law which the plaintiffs have challenged on the basis that they place discriminatory burdens on independent escrow agents are reasonably related to the purpose of protecting the public from unfair, fraudulent and incompetent service in the handling of escrows. Without regulatory legislation of the nature herein involved, the more recently developed business of independent escrow agents would be largely free of regulation while the individuals and entities which the plaintiffs claim are unconstitutionally favored by exemption from the Escrow Law would still be subject to stringent regulatory enactments and regulations of the general nature of the burdens of which plaintiffs complain, except that

---

"Any person subject to this division or any director, officer, agent, or employee of any such person who does any of the following is guilty of a felony:

(a) Knowingly receives or possesses himself of any property of the escrow otherwise than in payment for a just demand, and with intent to defraud omits to make or to cause or direct to be made a full and true entry thereof in the escrow books and accounts, or knowingly concurs in omitting to make any material entry.

(b) Knowingly concurs in making or publishing any written report, exhibit or statement of escrow affairs or pecuniary condition containing any material statement which he knows to be false.

(c) Having the custody or control of the escrow agent's books, willfully refuses or neglects to make any proper entry in such books as required by law, or willfully refuses or neglects to exhibit or allow the books to be inspected and extracts to be taken therefrom by the commissioner, or any of his deputies or examiners."

Section 17011 of the Financial Code is as follows:

"The violation of any provision of this division is a misdemeanor, unless a different punishment is prescribed."

[5]The original version of the Escrow Law is found in chapter 921 of the Statutes of 1947. The title of the 1947 legislation was: "An act to regulate the business of escrow agencies and the employees thereof, to provide for their licensing, examination and regulation by the Commissioner of Corporations, to provide exemptions from and prescribe penalties for violations of this act." (See Comment, *The Independent Escrow Agent: The Law And The Licensee* (1965) 38 So.Cal.L.Rev. 289, 291.)

in each instance, such as that of persons licensed to practice law, the regulatory provisions have been designed so as to be specifically appropriate for the particular profession or business involved. The reasonable inference is that the Legislature determined that, as to the exempted individuals and entities, the existing provisions adequately safeguarded the public but that it was necessary to enact specific regulatory measures with respect to the newer entrants into the escrow field.

That the burdens of which the plaintiffs complain are not discriminatory in nature but are reasonable concomitants of the specific type of business involved is manifest. As in the case of those exempted from the Escrow Law, the maintenance of adequate records and the segregation of funds belonging to customers or third persons are essential for the protection of the members of the public for whom escrow services are performed. Provisions, whether involving disciplinary measures or penal consequences, are necessary to discourage noncompliance with the law. The Legislature was free to determine that existing disciplinary laws and regulations and statutory penal provisions respectively applicable to one or more of the exempted individuals or entities were sufficient to afford sanctions for dishonest or fraudulent conduct of a nature akin to that set forth in section 17414 of the Financial Code. (See fn. 4 of this opinion.)

Some measures to assure financial stability and the avoidance of monetary loss are, of course, necessary where transactions involving the custody and disposition of substantial amounts of money or other forms of property are handled. Moreover, some standard as to training and experience on the part of those responsible for the proper consummation of the transactions undertaken in the business of an independent escrow concern is essential. The Legislature was warranted in determining that the qualifications of a person to assume responsibility with respect to the ethical and efficient conduct of such a business in each office thereof could not be readily ascertained by an examination, but that a person who had had substantial practical experience in the handling of escrows would be so qualified since by means of such experience the necessary understanding of the ramifications of escrow transactions and the required maturity of judgment could be acquired.[6]

---

[6]In *Accounting Corp.* v. *St. Bd. of Accountancy,* 34 Cal.2d 186, at page 190 [208 P.2d 984], the Supreme Court stated: "In licensing and regulating a profession or occupation the Legislature may properly classify persons on the basis of their experience by fixing a stated period of time as determining their qualification to continue in the activity without examination or other requirement designed to assure competence. Such legislation has been justified on the ground that an individual who has engaged in an activity subject to regulation for a period of time may be assumed to have the qualifications which others can be required to prove by examination or by compliance with other conditions."

On the other hand, turning to the exemptions embodied in section 17006 of the Financial Code, the Legislature was justified in assuming that the licenses respectively possessed by attorneys at law and real estate brokers sufficiently assured that they were competent to properly handle escrows incidental to the pursuit of the occupation for which they were licensed. Moreover, the Legislature was warranted in determining that as to those designated in the other subdivisions of section 17006, the necessary responsible supervision of the conduct of that portion of their business which related to escrows was reasonably assured by virtue of the nature of the principal business involved, as, for instance, that of banking or of the operation of a savings and loan association or an insurance company.

With respect to the prohibition of rebates and similar practices, it is sufficient to note that the Legislature may properly provide for safeguards against practices which tend to affect the independence of conduct of a person charged with a duty of a fiduciary nature or which are otherwise generally regarded as unethical. Unearned rebates, refunds and commissions as compensation for referrals constitute means of extracting secret profits from a helpless public. (See *Blumenthal* v. *Board of Medical Examiners*, 57 Cal.2d 228, 234 [18 Cal.Rptr. 501, 368 P.2d 101]; Ins. Code, §§ 750, 752, 755, 755.5, 761.)

Turning to the requirement that an independent escrow agent must be a corporation (Fin. Code, § 17200), consideration is to be given to the fact that an independent escrow agent may be handling numerous escrows involving substantial sums of money and in various stages of progress. If an individual person is operating such a business, his death could give rise to substantial complications and delays in the consummation of the transactions involved. As stated in *County of L. A.* v. *Southern Cal. Tel. Co.,* 32 Cal.2d 378, at pages 390-391 [196 P.2d 773]: "Corporations . . . are more easily regulated and supervised, and they have much greater permanency of existence and can give better assurance of uninterrupted service."

In a law review comment the benefits to the public arising from the requirement that the business of an escrow agent must be conducted by means of a corporation duly organized for that purpose are stated as follows (fns. omitted): "The reasons for limiting the licensing of an escrow agent to a corporation organized and licensed for that purpose are significant. First, a California corporation 'organized for profit' must have at least three directors. Since the qualifications of the prospective directors of a proposed licensee must appear on the escrow license application, it is now much easier for the Commissioner to recognize proposed directors who are not qualified to conduct an escrow business. This procedure enables the Commissioner to preclude the use of unqualified dummy directors in the organi-

zation of escrow corporations by rejecting applications in which inadequate qualifications are shown. In order to assure the qualifications of directors are maintained during the continuance of the corporation, the Commissioner has the authority to order the discontinuance of 'unsafe practices.' This power and the use of the corporate device provide a means of continuing control over the qualifications of the officers and directors of such a licensee. [¶] Second, the use of the corporate device simplifies the commissioner's responsibilities in controlling public access to the records of escrow agents which are on file in his office. Since the agent is now a separate corporate entity, audits are limited solely to the property involved in the escrow business. Prior to the 1953 amendment, requests for public access to the records of an unincorporated agent frequently created an issue of the invasion of the right of privacy, where personal records were intermingled with business records. [¶] A third change resulting from the use of the corporate form is that it increases the commissioner's control over the previously existing bonding requirements. It has been said that one of the negative effects of incorporation is that it insulates the owner's personal assets from liability for trust fund deficiencies. Thus a party to an escrow who is subject to loss due to the fault of the escrow agent has only one apparent recourse, the licensee's indemnity bonds. The required $5000 license bond is supplemented by the much broader protection of the performance bond required of all officers and directors. The greater degree of control which the Commissioner now has over those officers and directors allows him to administer that performance bond much more effectively." (Comment, *The Independent Escrow Agent: The Law And The Licensee* (1965) *supra,* 38 So.Cal.L.Rev. 289, 292-293.)

The law applicable to the resolution of the question presented by the plaintiffs' basic contention that the Escrow Law embodies an unconstitutional classification is stated in *O'Kane* v. *Catuira,* 212 Cal.App.2d 131, at page 137 [27 Cal.Rptr. 818, 94 A.L.R.2d 487], as follows: "In resolving this question, we are governed by several well settled principles in the law. '[T]he test for determining the validity of a statute where a claim is made that it unlawfully discriminates against any class is substantially the same under the state prohibitions against special legislation and the equal protection clause of the federal Constitution.' (*County of Los Angeles* v. *Southern Cal. Tel. Co.* (1948) 32 Cal.2d 378, 389 [196 P.2d 773].) In either case, a statute cannot be deemed in conflict with the constitutional provisions unless the discrimination or inequality produced by the particular legislative classification is ' " 'actually and palpably unreasonable and arbitrary' " ' (*People* v. *Western Fruit Growers, Inc.* (1943) 22 Cal.2d 494, 506 [140 P.2d 13].) ' " 'When a legislative classification is questioned, if any state of facts reasonably can be conceived that would

sustain it, there is a presumption of existence of that state of facts, and the burden of showing arbitrary action rests upon the one who assails the classification.' " ' (*Blumenthal* v. *Board of Medical Examiners* (1962) 57 Cal.2d 228, 233 [18 Cal.Rptr. 501, 368 P.2d 101].) [¶] It is also the rule, however, that a discrimination which bears no reasonable relation to a proper legislative objective is invalid. (*Accounting Corp.* v. *State Board of Accountancy* (1949) 34 Cal.2d 186, 190 [208 P.2d 984]; *Blumenthal* v. *Board of Medical Examiners, supra,* at p. 233.) ■ A legislative classification which is purely arbitrary and capricious and based upon no reasonable or substantial difference between the classes is clearly unconstitutional. (*Del Mar Canning Co.* v. *Payne* (1946) 29 Cal.2d 380, 382-383 [175 P.2d 231].)"

As has been explained above, there is a reasonable relation to a proper legislative objective in the inclusion of independent escrow agents within the Escrow Law and the exemption therefrom of the individuals and entities designated in section 17006 of the Financial Code. Since the legislative classification is not arbitrary and capricious but is based upon reasonable and substantial differences between the classes, the challenged law must be held to be constitutional. Consequently, the attack upon the declaratory judgment must fail.

The judgment is affirmed.

Schweitzer, J., and Allport, J., concurred.

A petition for a rehearing was denied April 24, 1972, and appellants' petition for a hearing by the Supreme Court was denied May 23, 1972.