[Civ. No. 53088. Second Dist., Div. Four. Mar. 19, 1979.]

GEORGE P. POST, Plaintiff and Appellant, v.
EDWARD V. PRATI et al., Defendants and Respondents.

**COUNSEL**

McKenna & Fitting, Aaron M. Peck, Michael D. Berk and David R. Wilson for Plaintiff and Appellant.

Evelle J. Younger, Attorney General, N. Gregory Taylor, Assistant Attorney General, Richard P. Yang, Deputy Attorney General, O'Donnell, Waiss, Wall & Meschke, Richard J. Wall, Walter M. Bank, Nossaman, Krueger & Marsh, Robert B. Krueger and Frederic A. Fudacz for Defendants and Respondents.

## OPINION

**JEFFERSON (Bernard), J.**—Plaintiff George P. Post sought injunctive and declaratory relief in an amended and supplemental complaint which challenged the constitutionality of Public Resources Code section 6922, enacted as part of the Geothermal Resources Act of 1967.[1]

Named as defendants were Edward V. Prati, John T. Sink, Peter H. Flood, Richard J. Wall as trustee for children of Peter H. Flood; these defendants will sometimes be referred to herein as the surface owners. Also named defendants were Aminoil U.S.A., Inc., a Delaware corporation, and Mervyn Dymally, Kenneth Cory and Roy Bell, in their representative capacity as members of the State Lands Commission of the State of California.

Defendants demurred to plaintiff's pleading, contending that it failed to state a cause of action. As a part of their demurrer, defendants requested the trial court to take judicial notice of various materials presented to illuminate the legislative history and objectives resulting in the act's passage. In support of his complaint, plaintiff also presented materials which were subject to judicial notice.

The trial court ruled in favor of the defendants, sustaining their demurrers without leave to amend, thereby upholding the constitutionality of Public Resources Code section 6922. The order of dismissal (judgment) was entered pursuant to Code of Civil Procedure section 581, subdivision (3). By corrected notice of appeal, plaintiff has appealed from the "Memorandum of Ruling" and the "Order of Dismissal." The "Memorandum," of course, is not an appealable order; we take cognizance of the "Memorandum" on the appeal from the order of dismissal, which is appealable.[2]

We take a brief look at the background of this dispute. In 1967, after several years of legislative study, the California Legislature amended the

---

[1]Added to the Public Resources Code by Statutes 1967, chapter 1398, section 39, page 3279. The Geothermal Resources Act of 1967 will be sometimes referred to herein simply as the act. Section 6922 was repealed in 1978 (Stats. 1978, ch. 1139, § 11.2, p. —) and reenacted as section 6912, in substantially the same form (Stats. 1978, ch. 1139, § 11.4, p. —).

[2]A written order of dismissal, signed by the court, constitutes a judgment from which an appeal may be taken. (Code Civ. Proc., §§ 581d, 904.1, subd. (a); *Diaz* v. *United California Bank* (1977) 71 Cal.App.3d 161, 166 [139 Cal.Rptr. 314].)

Public Resources Code (ch. 4 of div. 3, commencing with § 3700) and added article 5.5 (commencing with § 6902), the addition to be known as the Geothermal Resources Act of 1967.[3] The act reflected general legislative concern with the necessity for developing new energy sources, among them geothermal resources.[4] Geothermal resources located in California constitute potentially the largest amount in the world; many of these resources are found in areas of the state which are presently economically depressed, and where the development of new industry is essential.[5]

Thus it is provided by statute that "the people of the State of California have a direct and primary interest in the development of geothermal resources." (Pub. Resources Code, § 3700.) The general legislative objective was to promote the orderly and safe development of such resources and to secure maximum economic recovery therefrom.

The act itself is concerned with the development of this energy source on state-owned lands, or on land which has been conveyed by the state to private interests with a reservation of mineral rights to the state.[6] The developmental scheme contemplates the issuance of permits or long term leases by the State Lands Commission (hereinafter, the Commission) to private developers in return for royalties in specified amounts. As the result of legislative fact-finding, it was determined that economic feasibility requires minimum acreage of 640 acres to 2,560 acres for a geothermal plant; the act also specifies that no one entity would be able to lease more than 25,600 acres. Permits and leases are to be granted by the Commission to the highest qualified bidder.

---

[3] Statutes 1967, chapter 1398, section 39, page 3279.

[4] Geothermal resources is defined as "the natural heat of the earth, the energy, in whatever form, below the surface of the earth . . . and all minerals in solution or other products obtained from naturally heated fluids, brines, associated gases, and steam, in whatever form, . . . but excluding oil, hydrocarbon gas or other hydrocarbon substances." (Pub. Resources Code, § 6903.)

[5] Fourth Progress Report of the Senate Permanent Factfinding Committee on Natural Resources. 1967. 1 Senate Journal Supplement Appendix, section 1. Geothermal Resources, pages 1-66 (Reg. Sess. 1967).

[6] At the time the act was passed, there had been no definitive resolution of the question of whether geothermal resources were included in the term "mineral" as used in the reservations in state conveyances. There was sharp dispute as to whether the traditional law dealing with other minerals should apply or whether these resources would be treated legally as parts of water systems. In *Geothermal Kinetics, Inc.* v. *Union Oil Co.* (1977) 75 Cal.App.3d 56 [141 Cal.Rptr. 879], it was held that geothermal resources were properly part of reserved mineral rights. (See, also, *United States* v. *Union Oil Co. of California* (9th Cir. 1977) 549 F.2d 1271.)

Section 6922 of the Public Resources Code, the source of this litigation, created a bidding preference in favor of a surface owner of land which contains geothermal resources subject to state development. The section provided: "In case of an application for a permit or lease covering lands which have been sold by the state, subject to a reservation by the state of the geothermal resources thereof, by anyone other than the owner of such lands, the owner shall have six months from the date of service of notice on the owner of such application within which to file his application for a permit or lease. Such notice shall be served by the applicant together with a copy of the application. If the owner exercises his rights hereunder and is a qualified person, his application shall be granted but subject to all the other provisions of this article. If the owner fails to exercise the rights granted by this section, then the owner's rights hereunder shall thereupon cease and terminate and the original applicant shall be permitted to proceed with his application. [¶] In the event that the lands subject to such classification are classified as being within a known geothermal resource area, then, after the commission has determined the highest competitive bid thereon, *the owner may* within 10 days after notification by the commission *submit a bid identical to such highest acceptable bid, in which case the commission shall issue a lease to such surface landowner.* If the surface landowner does not file such a bid within such period of time, the commission may proceed with the award of the bid to other than such surface landowner." (Italics added.)

Section 6922, which allows a surface owner to make a preemptive bid, was included in the act without any specific accompanying explanation of legislative intent that we have been able to discover.

In the instant case, surface rights to the acreage in question, located in a geothermally rich resource area in Sonoma County, known as "The Geysers," were conveyed by the state to defendants Prati and Sink in 1949 and 1950, respectively. In 1953, Prati and Sink quitclaimed their interests to themselves and the other defendants identified herein as the surface owners. On January 1, 1967, all of the surface owners executed an agreement with the Signal Oil Company, thereby leasing the right to develop the geothermal resources; the successor in interest to that agreement is defendant Aminoil U.S.A., Inc.

In September 1976, the Commission announced, pursuant to the act, that competitive bidding would be held with respect to a geothermal lease of the acreage in question. In December 1976, defendant Commission determined that plaintiff Post had submitted the highest qualified bid,

offering to pay the state 47.77 percent of the net profits derived from development pursuant to the lease. Then, as provided by Public Resources Code section 6922, the surface owners were notified of plaintiff's bid, and submitted an identical bid to the Commission; the Commission accepted the identical bid made by the surface owners. The bid, of course, was actually made on behalf of Aminoil, to whom the surface owners were contractually bound.

Plaintiff, deprived of the lease, brought this action to test the constitutionality of Public Resources Code section 6922, and has appealed from the adverse judgment rendered below.

I

*Judicial Notice*

In the instant case, the judgment sustaining the demurrers was entered after the trial court had considered not only the contents of the complaint but also materials offered by the parties, of which the trial court took judicial notice.

With respect to the question of the sufficiency of the complaint, the appellate standard of review is conducted "by the well settled principles governing the testing of [the complaint's] sufficiency by demurrer: A demurrer admits all material and issuable facts properly pleaded. [Citations.] However, it does not admit contentions, deductions or conclusions of fact or law alleged therein." (*Daar* v. *Yellow Cab Co.* (1967) 67 Cal.2d 695, 713 [63 Cal.Rptr. 724, 433 P.2d 732].)

Judicial notice of a matter means the acceptance by the court of the existence of a matter of law or fact without the necessity of formal proof of that matter. "The doctrine of judicial notice is an evidentiary doctrine that permits the court to consider *as established* in a case a matter of *law* or *fact* that is relevant to an issue, without the necessity of formal proof of the matter by any party. Judicial notice is a substitute for formal proof. Judicial notice may be taken of either a proposition of *law* or a proposition of *fact*. The fundamental theory of judicial notice is that the matter that is judicially noticed is one of law or fact that *cannot reasonably be disputed.*" (Jefferson, Cal. Evidence Benchbook (1972) Judicial Notice, § 47.1, p. 833.) (Italics in original.) Judicial notice may be taken by the trial court in connection with a demurrer (Code Civ. Proc., § 430.70) and may also be considered by an appellate court in

conducting review. (*Serrano* v. *Priest* (1971) · 5 Cal.3d 584, 591 [96 Cal.Rptr. 601, 487 P.2d 1241].)

■ We have before us the materials judicially noticed below. Primarily, they consist of two major legislative committee reports on geothermal resources,[7] the "final [legislative] history" of the act,[8] excerpts from testimony given at public legislative hearings, and some correspondence directed to the Governor's office recommending his signature on Senate Bill No. 169 (the act) from the legislative analyst, a state agency, and an individual legislator. Judicial notice was properly taken of these materials since they are in the category of "[o]fficial acts of the legislative, executive, and judicial departments of the United States and of any state of the United States." (Evid. Code, § 452, subd. (c).)

As was explained in the comment by the Law Revision Commission to Evidence Code section 450, such extrinsic aids as legislative committee reports and legislative history are often helpful in assessing constitutional issues raised with respect to a statute. Interpretation of a statute, however, remains a matter of law.

Plaintiff concedes that both the trial and the appellate court may properly take judicial notice of the type of material that was offered here. Plaintiff, however, disputes the *relevance* of the material offered, pointing out that none of the material contained *specific* reference to Public Resources Code section 6922, the provision of which plaintiff complains. Plaintiff argues that, since no specific legislative intent could be determined with respect to section 6922, it was error for the trial court to resolve what plaintiff perceives to be a factual issue—that of legislative intent—without a trial.

It is true, as plaintiff contends, that none of the materials judicially noticed dealt specifically with the legislative purpose reflected in conferring a "right of first refusal" on surface owners with respect to geothermal leases, thus paving the way for the merger of the property interests involved. Plaintiff, of course, had equal opportunity in the trial court, on its consideration of the demurrer, to produce, along with defendants,

[7]The Joint Legislative Committee on Tidelands, California's Geothermal Resources, Report to the 1967 Legislature, Regular Session, 2 Senate Journal 2979-80 (1967 Reg. Sess.); Senate Permanent Fact-Finding Committee on Natural Resources, Geothermal Resources—Foundation for a Potentially Significant New Industry in California, Fourth Progress Report to the Legislature (1967 Reg. Sess.) 1 Senate Journal Supplement Appendix, pages 1-66 (1967 Reg. Sess.).

[8]Senate Final History 55 (1967 Reg. Sess.).

specifically relevant information if such existed. In the absence of the existence of such information, it is difficult to see how the issue of legislative purpose could be resolved by a factual trial; the opinions of individual legislators as to its purpose, even those closely associated with the challenged enactment, would not be admissible. (*In re Marriage of Bouquet* (1976) 16 Cal.3d 583 [128 Cal.Rptr. 427, 546 P.2d 1371].)

It remains a judicial function to interpret the meaning of a statute. Courts utilize the extrinsic aids available in performing this function. Despite the void which exists here as to specific legislative purpose, our task is to draw what inferences may reasonably be drawn from the legislative materials contained in this record, and to consider plaintiff's two contentions regarding the constitutionality of Public Resources Code section 6922 in light of the established principles of review.

II

*Does Section 6922 Violate the "Gift"*
*Prohibition Contained in the*
*California Constitution?*

■ Article XVI, section 6, of the California Constitution prohibits the Legislature from making "any gift, of any public money or thing of value to any individual, municipal or other corporation whatever; . . ." Plaintiff contends that Public Resources Code section 6922 violates this provision by conferring upon defendant surface owners, without adequate consideration, the preemptive right to bid.

There can be no dispute that the right to first refusal of a geothermal lease is a valuable right, "a thing of value." In the instant case, defendant surface owners presumably have profited from possession of the right, as the result of their transaction with Signal Oil Company.

The decisional law interpreting the constitutional prohibition against legislative "gifts" has defined the term "gift," as employed in the constitutional context, to mean not only a transfer of property without adequate consideration but a transfer made for a private as opposed to a public purpose.

In *County of Alameda v. Janssen* (1940) 16 Cal.2d 276, 281 [106 P.2d 11, 130 A.L.R. 1141], the court explained that "[i]t is well settled that, in determining whether an appropriation of public funds or property is to be

considered a gift, the primary question is whether the funds are to be used for a 'public' or a 'private' purpose. If they are for a 'public purpose,' they are not a gift within the meaning [of the Constitution's prohibition]. [Citations.] *The benefit to the state from an expenditure for a 'public purpose' is in the nature of consideration* and the funds expended are therefore not a gift *even though private persons are benefited therefrom.* [Citation.]" (Italics added.) (See, also, *Winkelman* v. *City of Tiburon* (1973) 32 Cal.App.3d 834, 844-845 [108 Cal.Rptr. 415].)

With this principle in mind, we analyze the rights and procedures established in section 6922, to determine if they reasonably could be regarded as beneficial to the state, thereby serving a legitimate public purpose. (*Mannheim* v. *Superior Court* (1970) 3 Cal.3d 678, 691 [91 Cal.Rptr. 585, 478 P.2d 17].)

In the "Memorandum of Intended Decision," the trial court in the instant case expressed the view that the limitation expressed in section 6922 with reference to competitive bidding was not detrimental to any state interest because the surface owner was required to meet the bid made by the outsider; furthermore, the trial court determined that the statutory scheme had been enacted for public purposes, although the specific purposes were not enumerated.

We fail to see any advantage to the public by the restriction of competitive bidding that is contained in Public Resources Code section 6922. The public would certainly be benefited in a situation where open competitive bidding for the geothermal lease would produce the highest bid that reasonably could be made, enabling the state to receive the highest rate of return in the form of royalties. But under section 6922, an outsider knows that not only must he expend whatever sums are necessary to arrive at an educated bid for a particular lease but that he must risk loss of the lease if an identical—but favored—bid is made by the surface owner. It is quite likely that if experience demonstrated over any length of time that the preemptive right was being regularly exercised, the inevitable result would be a lessening of interest in such projects by outsiders. Without that interest by outsiders, the state would be faced with a situation where the "highest qualified" bid might also be the only bid, made by the surface owner. We thus can find no benefit to the state here, considered in terms of bidding projects alone, which qualifies as the substitution for consideration required to justify the "gift," since public rather than private benefit is the measure.

Defendants, however, have offered another basis for establishing a public benefit from section 6922. It is contended that the surface owner of land harboring geothermal resources faces considerable detriment to his property interest by development of the resources. This detriment occurs in terms of access and substantial use of the surface, which the surface owner must permit to a lessee or permittee to obtain what lies below. Public Resources Code section 6915 provides that "[s]ubject to the other provisions of this article, the permittee or lessee shall be entitled to use so much of the surface as is reasonably necessary as determined by the commission for the production and conservation of geothermal resources."

Information gathered by legislative fact-finding (fn. 7, *ante*) reveals that plants must be constructed near the resources because of the nature of the energy involved; loss of heat would occur if the energy had to be transported for any distance prior to its conversion to usable electricity.

Thus it appears that development of these resources must necessarily have substantial impact on the surface owner's use and enjoyment of the land.

Defendants argue that the Legislature was mindful of this detriment to the surface owner, and feared that controversies would erupt between the holders of the various property interests, and that the ultimate result would frustrate the legislative purpose of energy development under optimal conditions. Section 6922, it is argued, was fashioned to encourage merger of the various property interests to lessen the possibility of controversy and litigation.

This appears to us to be a legitimate state concern. The Legislature certainly sought to minimize the detriment to the surface owner by providing the means by which that owner could retain some control over development and obtain remuneration from those chosen to undertake the development. The benefit to the state lies in the likelihood that the arrangement will promote rather than impede orderly economic growth. The solution to the problem was one the Legislature, in its admittedly broad discretion, was entitled to select. We conclude that the preference extended to surface owners may serve a justifiable public goal, and that the California Constitution has not been violated thereby.

## III

### ■ *Does Section 6922 Deny Plaintiff Equal Protection of the Laws?*

Article I, section 7 of the California Constitution, as added in 1974, provides, in pertinent part, that "[a] person may not be . . . denied equal protection of the laws. . . ."

Plaintiff contends that Public Resources Code section 6922 establishes an unconstitutional classification of surface owners as the preferred recipients of geothermal leases, and that this classification has denied to him his constitutional right of equal protection.[9]

We review briefly the principles applicable to such a contention. It was explained in *Serrano v. Priest* (1971) 5 Cal.3d 584, 597 [96 Cal.Rptr. 601, 487 P.2d 1241], that "the United States Supreme Court has employed a two-level test for measuring legislative classifications against the equal protection clause. 'In the area of economic regulation, the high court has exercised restraint, investing legislation with a presumption of constitutionality and requiring merely that distinctions drawn by a challenged statute bear some rational relationship to a conceivable legitimate state purpose. . . .' "

■ We perceive section 6922 as an example of economic regulation. "There is no constitutional requirement of uniform treatment. [Citations.] Legislative classification is permissible when made for a lawful state purpose and when the classification bears a rational relationship to that purpose. [Citations.] 'Wide discretion is vested in the Legislature in making the classification and every presumption is in favor of the validity of the statute; the decision of the Legislature as to what is a sufficient distinction to warrant the classification will not be overthrown by the courts unless it is palpably arbitrary. . . . [Citations.] *A distinction in legislation is not arbitrary if any set of facts reasonably can be conceived that would sustain it.*' [Citations.]" (*Estate of Horman* (1971) 5 Cal.3d 62, 75 [95 Cal.Rptr. 433, 485 P.2d 785].) (Italics added.)

---

[9]Plaintiff reiterates that the purpose of legislative classification here is a factual issue which should not have been resolved on demurrer, and also argues that the "conceivable" purposes set forth by the defendants for the classification are without merit. There have been a number of appellate decisions upholding the constitutionality of statutes by judgment on pleadings, without trial. (See e.g., *Escrow Institute of Cal. v. Pierno* (1972) 24 Cal.App.3d 361 [100 Cal.Rptr. 880]; *Reed v. City & County of San Francisco* (1965) 237 Cal.App.2d 23 [46 Cal.Rptr. 543].)

█ We have previously discussed herein the legitimate state interest which supports the preferential classification established in Public Resources Code section 6922 for surface owners such as the defendants herein. The Legislature's purpose was to encourage the creation of a new industry and the growth of energy production under optimum conditions. To that end, the Legislature perceived a rational relationship between its goal and the merging of property interests in land where the energy source was located.[10] We find that there is an important state interest in giving a preference to surface owners in bidding for geothermal leases, and that the classification made by Public Resources Code section 6922 significantly furthers this important state interest. Plaintiff's equal protection contention must therefore fail.

The judgment is affirmed.

Kingsley, Acting P. J., and Alarcon, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 17, 1979.

---

[10] Even if we were to apply the suggested intermediate standard of review for the law of equal protection—and inquire if the classification *significantly* furthers *important* state interest—we would still hold that Public Resources Code section 6922 does not violate plaintiff's constitutional right to equal protection of the laws. (See *Hawkins* v. *Superior Court* (1978) 22 Cal.3d 584, 595 [150 Cal.Rptr. 435, 586 P.2d 916] (conc. opn. of Mosk, J.).)